EDWARD DANIEL HAY V. STATE.

No. 25041. January 24, 1951.
Rehearing Denied April 11, 1951.

*Allen, Locke & Kouri*, by *Z. D. Allen*, Wichita Falls, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

BEAUCHAMP, Judge.

The offense is burglary. The punishment assessed by the jury, on a plea of not guilty, was twelve years.

The Evans Pharmacy in Wichita Falls was burglarized on the night of March 20, 1950. Discovery of the same was made by two city policemen, evidently while the same was in progress. One of the policemen, going to the back of the store on the outside, noted two men running away therefrom down the alley at the rear of same. An officer shot at these men with a shotgun and later, after they had gotten into a Ford car and started away, he shot at the rear of said Ford. An alarm was spread and a Ford, meeting the description of this Ford, was seen by other officers a few minutes thereafter. A wild chase followed and finally this Ford was abandoned near a dry creek. Three men were seen to flee therefrom. One officer searching the vicinity of the creek noted that the back door of Mr. Gotcher's house had been kicked in. When the officer made inquiries at the Gotcher home the owner thereof turned over appellant who had been found in his bathroom. Appellant had offered Mr. Gotcher $100.00 to conceal him from his pursuers. Before discovering appellant in his bathroom Mr. Gotcher had heard a noise being made with the toilet tank. After the officers left Mr. Gotcher discovered in said tank certain electric fuses, dynamite caps and a certain quantity of nitroglycerine. This was later turned over to officers and then identified as such by an expert in explosives who testified at the trial.

A search of the burglarized pharmacy revealed that the combination knob and the handle had been prized off of a safe. A large bar, a hammer and a sledge hammer were found on the floor. The burglars had forced the back door in order to make their exit. In the alley behind the store was found a gas mask. A search of the Ford car found at the creek, and identified as that of appellant by a tourist court registration, revealed a brown canvas bag containing two crowbars, punches, chisels and other tools incident to the burglary profession. Also several pairs of silk gloves, some tear gas cartridges, a tear gas pencil

or gun, a regular pistol which was loaded, seismograph electric and mercury blasting caps, a quantity of fuses and a quantity of nitroglycerine were found.

The explosives found in Mr. Gotcher's toilet tank were of the same type as those found in appellant's car. A search of the outside of the Ford revealed three indentures appearing to have been made by buckshot.

Appellant comes before this court with six bills of exception. Bill of Exception No. 1 complains of the overruling of his second motion for continuance. Such was made to secure the testimony of one Audie L. Miller who he alleges would testify that some time prior to the day of the Wichita Falls burglary he, Miller, and appellant were near a lake in Dallas together and that certain boys shot air guns into the back of appellant's car, thereby causing the indentures therein. Appellant's bill fails in the following respects:

(1) It is not shown in the bill of exception, same being on a second motion for continuance, that the testimony could not be produced from any other source known to the defendant. While it may have been true that Miller alone was with appellant at the lake in Dallas, still it is the existence of such indentures in appellant's car prior to the burglary that appellant needed to establish for his defense and not the cause of such indentures. Surely appellant's automobile was seen by many people, who could have been called as witnesses, between the time the indentures were alleged to have been made and the time of the burglary.

(2) It does not show that the automobile which appellant had at the lake in Dallas was the same automobile which the appellant had in Wichita Falls at the time of the burglary.

Bill of Exception No. 2 complains of admission of testimony about the finding of a gas mask in the alley at the rear of the burglarized premises. The court feels that such evidence is admissible in view of the evidence of the finding of a gas pencil or gun, and gas cartridges, in the appellant's automobile. The court further observes that appellant's bill is deficient in that it contains no recitation of fact other than the objection itself. The rule is well stated in 4 Texas Jurisprudence, Section 206, page 293.

Bill of Exception No. 3 is deficient because it fails to show that the argument complained of was not invited. Any bill of

exception to argument of the state's attorney, in order to be effective as such, must contain a recitation that such argument was not in reply to some comment of appellant's counsel. 4 Texas Jurisprudence, Section 263, page 396.

Bill of Exception No. 4 complains of the argument of the prosecutor to the effect that, "* * * under the evidence he (the defendant) is a professional from Dallas." This bill, like Bill of Exception No. 3, is deficient because it fails to show that such argument was not invited. However, it appears to the court that the paraphernalia traced to the possession of the defendant would certainly take him out of the amateur category.

Bill of Exception No. 5 complains of the argument of the state's attorney to the effect that: "These hoodlums from Dallas * * *." Were this bill not deficient for the same reasons assigned to Bills of Exception Number 3 and 4, the court would have some difficulty in passing upon this question. Time and time again this court has admonished prosecutors to remain within the record. It may be within the record to conclude that because of his equipment the defendant brought himself within the category of a hoodlum, but it would have been much wiser for the prosecutor to have refrained from so characterizing him.

Bill of Exception No. 6 complains of the court's charge on the law of principals. This charge tracks the statute rather accurately which should be the test of the propriety of a court's charge.

Finding no reversible error in the record the judgment is in all things affirmed.

## ON MOTION FOR REHEARING.

GRAVES, Presiding Judge.

In appellant's motion for rehearing it is called to our attention that we inadvertently made the erroneous statement in our original opinion relative to the fact that the instrument denominated "Appellant's Second Motion for a Continuance" did not show therein that the testimony of the desired witness could not be procured from any other source. In this we were in error. The motion does make such statement and that portion of the opinion is withdrawn.

We think it is apparent from the face of the instrument

and from the state's motion controverting the same that the appellant was lacking in diligence in order to procure the attendance of the witness, Audie L. Miller.

It is shown in the record that this cause was originally set for April 10, 1950; that on April 7, 1950, an application for the issuance of a subpoena for Audie L. Miller was filed with the district clerk of Wichita County; that the witness was alleged to reside in Dallas County, Texas; that the subpoena for said witness was issued and sent to the sheriff's department in Dallas County, Texas; that same seems to have been received there on April 8, 1950; that it was not executed but returned with the following notation:

"Returned unexecuted this 10th day of April, A.D., 1950, as unable to locate the within named *witnesses* in Dallas County, Texas, after diligent search and inquiry."

This subpoena was returned and filed with the papers on April 11, 1950.

On April 10, 1950, the defendant filed an affidavit wherein the question of insanity was raised. Same was tried and disposed of on that day. On the following day, this case was called for trial on its merits, and the defendant made a motion for a continuance, which was granted, and this cause was set for April 24th. When this case was called for trial on said date, the defendant did not appear, and at the request of his attorneys, the cause was reset for 1:30 P.M. on the same day. At that time the defendant had still not been located, and his bond was then forfeited. Thereafter, he was apprehended in a different state and returned to Ellis County, Texas. The district court of Wichita County issued its bench warrant and the case was set for trial on Monday, May 29, 1950. Again, this case was passed from May 29th to May 31st, at which time the defendant's trial seems to have taken place. In the first place, it is shown that this witness was never subpoenaed at any time, but he did appear upon the insanity trial on April 10, 1950. Thereafter, neither the witness nor the appellant seems to have appeared in court, and no process was ever requested to compel the attendance of the witness. We think the defendant was entirely lacking in diligence or in making an endeavor of any kind to insure the presence of the witness Audie L. Miller on the trial of this case.

Complaint is again made of the fact that the district attorney of Wichita County, in his argument to the jury, made the

statement that "under this evidence he (appellant) is a professional from Dallas." We think this argument was justified by the evidence. We do find that the appellant was in possession of paraphernalia, including nitroglycerine and other explosives, as well as a gas pencil or gun, and gas masks, which could be utilized in whatever endeavor he might be engaged in. We think the testimony amply sustains the statement made by the state's attorney.

The remark of the district attorney, in speaking of the persons who had committed the burglary, as "these hoodlums from Dallas," is again complained of. We hardly think that because the district attorney referred to the appellant and his companions as "hoodlums" would be a sufficient amount of abuse to warrant the matter being considered as a basis for a reversal of this case.

Believing that this case has been properly disposed of, the motion for rehearing is overruled.